IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ULLIMAN SCHUTTE CONSTRUCTION, LLC<br>9111 Springboro Pike<br>Miamisburg, Ohio 45342<br><br>    Plaintiff,<br><br>v.<br><br>CLEAVER-BROOKS, INC.,<br>221 Law Street<br>Thomasville, Georgia 31792<br><br>Serve:  Bart A. Aitken<br>         President, CEO and Director<br>         Cleaver-Brooks, Inc.<br>         221 Law Street<br>         Thomasville, Georgia 31792 | § § § § § § § § § § § § § § § § § | Civil Action No. 18-2019 |

## COMPLAINT

Plaintiff, Ulliman Schutte Construction, LLC ("USC"), by its undersigned attorneys, hereby files its Complaint against the defendant, Cleaver-Brooks, Inc., ("CBI"), and states as follows:

### PARTIES

1. USC is a limited liability company formed under the laws of the State of Ohio, with its principal place of business at 9111 Springboro Pike, Miamisburg, Ohio 45342, and is qualified to transact business in the District of Columbia. USC is in the business of providing construction and design-build related services for water and wastewater treatment plants, pump stations and associated utility work throughout the United States.

2. Upon information and belief, Defendant CBI is a Delaware corporation with a principal place of business at 221 Law Street, Thomasville, Georgia 31792. CBI is in the

business of manufacturing boilers, hot water and steam generation products, and providing testing and installation assistance for those products, and other related equipment.

## JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 28 USC § 1332 because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

4. Venue is proper in this Court under 28 USC § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is subject of the action is situated, within the District of Columbia.

## FACTUAL ALLEGATIONS

5. On or about February 20, 2012, PEPCO Energy Services, Inc. ("Pepco") entered into a Contract (the "Prime Contract") with the District of Columbia Water and Sewer Authority ("DC Water") for approximately $82 million to design, construct, operate and maintain the Combined Heat and Power Facility ("CHP Facility") at the Blue Plains Advanced Wastewater Treatment Plant in Washington, D.C. (the "Project").

6. On or about May 18, 2012, Pepco entered into a separate construction contract with USC (the "Construction Contract") pursuant to which USC agreed to construct significant portions of the CHP Facility as designed by Black & Veatch (under a separate subcontract with Pepco) for a Guaranteed Maximum Price of $44,846,636 (subject to adjustment in accordance with the terms of the Construction Contract).

7. On or about May 23, 2013, USC entered into a Purchase Order Agreement No. 1121-160 with CBI (the "Purchase Order"), in the amount of $1,090,000.00 for the provision by CBI of certain labor, materials and equipment related to a steam boiler, deaerators and other

pertinent equipment for the Project. A copy of the Purchase Order is attached hereto as **Exhibit 1** and is incorporated by reference herein.

8. The Purchase Order incorporates the terms of the Construction Contract and binds CBI to USC, as it relates to CBI's work on the Project, in the same manner as USC is bound to Pepco pursuant to the terms of the Construction Contract.

9. CBI was expressly aware of the contractual relationship that existed between Pepco and USC as it related to USC's obligation to Pepco to provide boilers, deaerators and other pertinent equipment for the timely and successful completion of the Construction Contract.

10. During the course of the Project, change orders were issued to CBI for certain additional work and/or scope changes and clarifications to the Purchase Order.

11. Change Order No. 1 to the Purchase Order, which modified the Purchase Order Terms and Conditions, but did not change the Purchase Order value, was executed on August 12, 2013. A copy of Change Order No. 1 to the Purchase Order is attached hereto as **Exhibit 2** and is incorporated by reference herein.

12. Change Order No. 2 to the Purchase Order, in the amount of $75,000, was executed on January 27, 2014. A copy of Change Order No. 2 to the Purchase Order is attached hereto as **Exhibit 3** and is incorporated by reference herein.

13. Change Order No. 3 to the Purchase Order, in the amount of $173,688.33, was executed on December 22, 2014. A copy of Change Order No. 3 to the Purchase Order is attached hereto as **Exhibit 4** and is incorporated by reference herein.

14. The total and final value of the Purchase Order, subject to recoupment/setoff for any and all damages as alleged in this Complaint, is $1,338,688.33.

15. During the course of the Project, CBI's performance of its work was deficient and CBI failed to comply with and perform its obligations pursuant to the express terms and conditions of the Purchase Order.

16. As part of its work, CBI was to furnish, test and certify an auxiliary steam boiler for the Project in accordance with certain dates specified in the Purchase Order. However, the auxiliary boiler that was provided by CBI was delivered late and was significantly defective. The auxiliary boiler did not perform as required by the specifications and was manufactured with multiple defective components and parts that had to be replaced on multiple occasions.

17. The auxiliary boiler was also unable to achieve performance criteria which were expressly required by the Contract, and there were significant costs and impacts to USC and Pepco associated with the commissioning of the auxiliary boiler to bring it within operational tolerances. Due to CBI's defective work, the auxiliary boiler was not fully operational until more than two (2) years after its scheduled completion.

18. CBI's deficient performance of its work, relating to the auxiliary boiler and other aspects of its work, resulted in significant delays and impacts to the timely completion of the Project as required by the Construction Contract and Purchase Order. As a result of such delays, USC was assessed liquidated damages by Pepco, and in addition, both Pepco and USC incurred actual delay damages associated with such delays.

19. USC and Pepco also incurred direct damages and increased costs in having to correct, complete and remedy CBI's defective work relating to the auxiliary boiler and other aspects of CBI's work.

20. In a case filed with the American Arbitration Association (the "Arbitration"), USC asserted claims against Pepco for changes and unpaid work on the Project in the

approximate amount of $13,600,000. However, Pepco asserted counterclaims against USC in the Arbitration that were in excess of $12,000,000 due primarily to CBI's deficient and delayed performance of its work relating to the auxiliary boiler and other aspects of CBI's work.

21.     During the pendency of the Arbitration, USC sought CBI's assistance with respect to defending and refuting the counterclaims made by Pepco arising out of CBI's deficient and delayed performance of its work relating to the auxiliary boiler and other aspects of CBI's work.

22.     CBI refused to provide the assistance requested by USC.

23.     As a result of Pepco's claims against USC, which were primarily due to the actions and omissions of CBI, and the refusal of CBI to provide USC with the requested assistance defending those claims, USC was forced to settle its claims against Pepco and its claims were reduced in value by approximately $7,400,000.

24.     Furthermore, during the course of the Project, CBI ceased performing certain portions of work under the Purchase Order and began to perform such work directly for Pepco. CBI also performed additional or changed work for Pepco that would have otherwise been properly payable to USC's account pursuant to the terms and conditions of the Construction Contact. In performing the work for Pepco, and contrary to USC's objections and directives, CBI ceased communications with USC and began communicating directly with Pepco. CBI also refused to coordinate or schedule its work through USC as required by the Purchase Order.

25.     CBI was paid directly by Pepco to perform work that would otherwise have been performed pursuant to CBI's Purchase Order, or by USC pursuant to the Construction Contract. CBI's performance of changed work directly for Pepco, which it was required to perform under the Purchase Order, has caused financial damages to USC in the form of lost profit on the work

performed, lost opportunity costs on changed work, and other costs incurred and/or assessed due to the delayed and uncoordinated completion of all of CBI's work.

## COUNT I – BREACH OF CONTRACT

26. The allegations contained in paragraphs 1 through 25 of this Complaint are hereby realleged and are incorporated by reference as if specifically stated herein.

27. CBI materially breached the Purchase Order by performing deficient work and failing and refusing to perform its obligations under the Purchase Order pursuant to its express terms and conditions including, but not limited to:

    a. Providing boiler, deaerator and other equipment that repeatedly failed to meet the requirements of the Purchase Order and the Construction Contract plans and specifications;

    b. Failing to coordinate its work with that of other subcontractors and material suppliers on the Project;

    c. Failing to provide boiler, deaerator and other equipment in a timely and proficient manner as required to meet critical milestones identified in the Purchase Order;

    d. Failing to provide Project closeout documentation, including manuals, as-built drawings, and other required documentation, in a timely and proficient manner to meet critical milestones identified in the Purchase Order;

    e. Failing to provide its submittals in a timely and proficient manner to meet critical milestones identified in the Purchase Order;

   f. Refusing to provide assistance to defend USC from the allegations of Pepco that the CBI provided parts and equipment were deficient and/or defective, and that said equipment delayed the completion of the Project; and

   g. Failing to accurately and completely coordinate and perform all shop and field testing and start-up of the equipment provided by CBI to the Project in a timely and proficient manner to meet critical milestones identified in the Purchase Order.

  28. In addition, CBI materially breached the Purchase Order by performing work directly for Pepco and failing to coordinate that work with USC. In doing so, CBI impacted USC's ability to fully complete the work of the Construction Contract and caused USC to incur financial loss on the Project including, but not limited to, a loss of profit on USC's work under the Construction Contract, the loss of opportunity of USC to recover additional costs and profit on changed work being performed by CBI directly for Pepco, damages due to CBI's inability to complete all work required by the Purchase Order, and delays and impacts to USC's other work being performed.

  29. As a result of CBI's material breaches of the Purchase Order, the completion of the Project was delayed and Pepco withheld millions of dollars of monies owed to USC under the Construction Contract, asserted claims for millions of dollars in liquidated damages and costs of renting and operating temporary boilers. In addition, USC incurred increased costs including actual delay damages.

30. As a result of CBI's material breaches of the Purchase Order, USC incurred increased costs in having to correct, complete and/or remedy CBI's deficient performance of its work.

31. All conditions precedent required of USC to bring this Complaint pursuant to the Purchase Order, and at law, have occurred, have been waived or are otherwise discharged.

32. Due to CBI's material breaches of the Purchase Order, USC has been damaged and it is entitled to compensation from CBI for any and all damages arising from CBI's breaches in an amount to be proven at trial, but currently anticipated to be in excess of $7,000,000.

33. Pursuant to Article 18 of the Purchase Order Terms and Conditions, USC is entitled to its attorneys' fees resulting from CBI's breaches as identified herein.

WHEREFORE, Plaintiff Ulliman Schutte Construction, LLC requests that this Court enter a judgment in its favor and against Defendant Cleaver Brooks, Inc. on Count I in an amount to be proven at trial, but which is currently in excess of $7,000,000, plus pre-judgment and post-judgment interest, costs, attorneys' fees, disbursements and such other relief as the Court deems just and appropriate.

## COUNT II – BREACH OF EXPRESS AND IMPLIED WARRANTIES

34. The allegations contained in paragraphs 1 through 33 of this Complaint are hereby realleged and are incorporated by reference as if specifically stated herein.

35. CBI expressly and impliedly warranted to USC that its goods, supplies and services would be free of defects in design, material, workmanship, would be of good and merchantable quality, would conform strictly to the plans and specifications of the Construction Contract, and would be suitable for the particular purposes for which they were intended.

36. CBI breached its express and implied warranties by providing boiler, deaerator and other equipment that was defective, and that failed to meet the requirements of the Purchase Order and the Construction Contract plans and specifications.

37. Due to CBI's breaches of its express warranties of the Purchase Order, and its other implied warranties, USC has been damaged and it is entitled to compensation from CBI for any and all damages arising from CBI's breaches of warranties in an amount to be proven at trial, but currently anticipated to be in excess of $7,000,000.

WHEREFORE, Plaintiff Ulliman Schutte Construction, LLC requests that this Court enter a judgment in its favor and against Defendant Cleaver Brooks, Inc. on Count II in the amounts to be proven at trial, but which is currently in excess of $7,000,000, plus pre-judgment and post-judgment interest, costs, attorneys' fees, disbursements and such other relief as the Court deems just and appropriate.

### COUNT III – INDEMNITY

38. The allegations contained in paragraphs 1 through 37 of this Complaint are hereby realleged and are incorporated by reference as if specifically stated herein.

39. Section 13 of the Terms and Conditions of the Purchase Order requires CBI to indemnify USC for any liability, costs, expenses, loss or damage, including attorneys' fees, that are actually or allegedly caused or contributed to, in whole or in part, by any defect in CBI's work, delay in the performance of CBI's work, breach of contract or any other negligent or wrongful act of CBI.

40. CBI has breached Section 13 of the Terms and Conditions of the Purchase Order by failing, after demand, to indemnify USC for all damages, costs, expenses and attorneys' fees

relating to or arising out of CBI's deficient work and delays on the Project including, but not limited to, its defective performance relating to the auxiliary boiler.

41. Pursuant to Section 13 of the Terms and Conditions of the Purchase Order, CBI is liable to USC for all damages, costs and expenses, including attorney fees, relating to or arising out of CBI's deficient work and delays on the Project, currently anticipated to be in excess of $7,000,000.

WHEREFORE, Plaintiff Ulliman Schutte Construction, LLC requests that this Court enter a judgment in its favor and against Defendant Cleaver Brooks, Inc. on Count III in an amounts to be proven at trial, but which is currently in excess of $7,000,000, plus pre-judgment and post-judgment interest, costs, attorneys' fees, disbursements and such other relief as the Court deems just and appropriate.

## JURY DEMAND

Ulliman Schutte Construction, LLC demands a trial by jury on all issues so triable.

Respectfully submitted,

ULLIMAN SCHUTTE CONSTRUCTION, LLC

DATED: August 28, 2018     By:    /s/ Daniel J. Kraftson
Daniel J. Kraftson (DC Bar # 948034)
Sean M. Howley (DC Bar # 472850)
Brad C. Friend (DC Bar # 490430)
Jonathan J. Straw (DC Bar # 1004943)
Kraftson Caudle
1600 Tysons Boulevard, Suite 250
McLean, Virginia 22102
(703) 873-5500 (Telephone)
(703) 873-5519 (Facsimile)
dkraftson@kraftsoncaudle.com
showley@kraftsoncaudle.com
bfriend@kraftsoncaudle.com
jstraw@kraftsoncaudle.com

*Counsel for Ulliman Schutte Construction, LLC*

Respectfully submitted,

ULLIMAN SCHUTTE CONSTRUCTION, LLC

DATED: August 28, 2018     By:     /s/ Daniel J. Kraftson
Daniel J. Kraftson (DC Bar # 948034)
Sean M. Howley (DC Bar # 472850)
Brad C. Friend (DC Bar # 490430)
Jonathan J. Straw (DC Bar # 1004943)
Kraftson Caudle
1600 Tysons Boulevard, Suite 250
McLean, Virginia 22102
(703) 873-5500 (Telephone)
(703) 873-5519 (Facsimile)
dkraftson@kraftsoncaudle.com
showley@kraftsoncaudle.com
bfriend@kraftsoncaudle.com
jstraw@kraftsoncaudle.com

*Counsel for Ulliman Schutte Construction, LLC*